Alex R. Straus (SBN 321366)
**MILBERG PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

*Attorneys for Plaintiff and Putative Classes*
*Other Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN BREWER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JERSEY MIKE'S, INC. and JERSEY MIKE'S FRANCHISE SYSTEMS, INC.,<br><br>Defendants. | **CASE NO. 5:26-cv-535**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Justin Brewer ("Plaintiff") brings this Class Action Complaint against Defendants Jersey Mike's, Inc. and Jersey Mike's Franchise Systems, Inc. (together, "Defendants" or "Jersey Mike's"), by and through undersigned counsel, individually

and on behalf of all others similarly situated, and in support alleges, upon information and belief and based on the investigation of counsel, as follows:

## INTRODUCTION

1. Jersey Mike's is submarine sandwich franchise that operates over 3,000 locations in all 50 states.[1]

2. Consumers across the United States can purchase orders for pickup or delivery from their local Jersey Mike's restaurant by using Defendants' uniform online ordering system on the Jersey Mike's mobile application (the "App"), which consumers can download on their personal mobile device.

3. The retail prices of Jersey Mike's products are identical whether a customer makes a purchase for pickup or delivery in the App. However, Jersey Mike's imposes a $2.99 "Delivery Charge" for delivery orders, which is disclosed on a customer's Order Summary at checkout.

4. Although reasonable consumers fairly believe that the $2.99 Delivery Charge represents the total price for delivery, in reality Jersey Mike's charges an additional hidden delivery fee on every delivery order.

5. When consumers place a delivery order on the App, they are charged an undisclosed service fee (the "Service Fee"), which is hidden within a line item

[1] https://www.jerseymikes.com/franchise (Last accessed February 4, 2026).

labeled "Taxes & Fees." This Service Fee is charged in addition to the conspicuously disclosed Delivery Charge.

6. Although the Service Fee is purportedly charged to "offset the costs of digital convenience," it is applied only to delivery orders and therefore functions as a *de facto* delivery fee.

7. As a result of the Service Fee, consumers pay a uniformly higher price for delivery orders than advertised.

8. Jersey Mike's misconduct has caused Plaintiff and putative Class Members to suffer injury in fact, including economic damages. Accordingly, Plaintiff brings this suit to recover damages on behalf of Plaintiff and Class Members.

9. Plaintiff seeks damages and other equitable remedies both individually and for the proposed classes.

## **JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members; (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (3) there is minimal diversity because Plaintiff and Defendant are citizens of

different States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. This Court may exercise personal jurisdiction over Defendants because Defendants have substantial aggregate contacts with this District, including engaging in contact that has a direct, substantial, reasonably foreseeable, and an intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States and the State of California. Furthermore, Defendants do substantial business in this State and within this District, receive substantial compensation and profits from said business in this District, and have engaged in the unlawful practices described in this Complaint within this District.

12. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

13. At all relevant times, Plaintiff Justin Brewer was a citizen of the state of California and resident of San Jacinto, California.

14. Defendant Jersey Mike's, Inc. is a Delaware corporation with its principal place of business at 2251 Landmark Place, Manasquan, New Jersey 08736.

15. Defendant Jersey Mike's Franchise Systems, Inc. is a New Jersey corporation with its principle place of business at 2251 Landmark Place, Manasquan, New Jersey 08736.

16. At all times relevant herein, Defendants are the agents and/or alter egos of each other in the operation of their restaurant franchise system.

17. At all times relevant herein, Defendants were engaged in actual and/or de facto joint ventures in the operation of their restaurant franchise system.

## FACTUAL ALLEGATIONS

***Defendants' Business***

18. Jersey Mike's is a brand firmly rooted in American culture. Beginning as a single submarine sandwich shop in 1956, Jersey Mike's has expanded to over 3,000 locations in 1,400 cities.[2]

19. Jersey Mike's has experienced explosive growth in recent years and is currently positioned as Franchise 500's number one franchise in the country.[3] In 2024, it was sold to the private equity firm, Blackstone, for $8 billion.[4]

---

2 *Id.*

3 https://www.entrepreneur.com/franchise-500/jersey-mikes-sold-for-8-billion-their-new-ceo-is-ready-to-double-their-3200-u-s-locations (Last accessed February 4, 2026).

4 *Id.*

20. Beginning in 2002, Jersey Mike's invested heavily in technology to enhance customer experience, streamline operations, and drive revenue.[5] Jersey Mike's has spent "billions" on investing in technology to increase both customer experience and profitability.[6]

21. In 2011, Jersey Mike's introduced mobile ordering in the App, with a single point-of-sale system used across all of its store locations.[7]

22. The App allows consumers to order sandwiches and other menu items for delivery from their personal mobile devices. The App also allows customers to earn rewards on purchases through "Shore Points," Jersey Mike's loyalty program.

23. Every time a customer places a delivery order through the App, Jersey Mike's collects data from that customer, including their name, email address, telephone number, delivery address, order details, and payment information. Jersey Mike's retains this data, which is evidenced by the fact that consumers can access their online order history in the App.

24. Based on information and belief, Jersey Mike's is the sole creator, designer and developer of the App, and maintains control and authority over the

---

5 https://www.restaurantbusinessonline.com/financing/how-jersey-mikes-did-things-its-own-way-won-2020#:~:text=on%20our%20part."-,The%2010%20largest%20sandwich%20chains,increase%20so%20far%20in%202021 (Last accessed February 4, 2026).

6 *Id.*

7 https://www.qsrmagazine.com/news/orders-jersey-mikes-release-mobile-app/ (Last accessed February 4, 2026).

content contained therein, including all of the representations and omissions that are the subject of this action.

***Defendants' Uniform Misrepresentations and Omissions***

25. The App allows consumers to browse products, add items to their cart, apply promotions or deals, and complete their purchase using various payment methods including credit cards, debit cards, Apple Pay, and PayPal.

26. Although a customer's mobile order is routed to their local Jersey Mike's store, all retail locations across the United States use the same App, which contains identical representations and omissions regardless of a customer's location. For example, a customer ordering from the Jersey Mike's App in California is exposed to the same representations and omissions as a customer ordering from the Jersey Mike's App in any other state.

27. When launching the App, consumers must select "pickup" or "delivery" and confirm their location before being redirected to the Jersey Mike's menu.

28. The Jersey Mike's menu lists identical retail prices for both pickup and delivery orders. However, for delivery orders a $2.99 Delivery Charge is added at checkout.

29. Despite conspicuously disclosing the Delivery Charge on a separate line item at checkout, Jersey Mike's fails to notify consumers that they will also be

charged a Service Fee[8] on all delivery orders. This Service Fee is hidden within a line item labeled "Taxes & Fees," where it is purposefully concealed from reasonable consumers.

30. When placing an order on the App, just prior to payment, customers are shown a breakdown of their charges.




31. A small icon appears next to the "Taxes & Fees" line item on the payment screen.

[8] Based on information and belief, the Service Fee currently ranges from $2-5.




32. If, *and only if*, a customer were to notice the icon and click on it, the following "Price Breakdown" would be displayed:




33. Notably, if a customer fails to notice the icon or chooses not to click it, they can complete their purchase without ever being notified of the Service Fee.

34. Despite Jersey Mike's representations that the Service Fee "helps offset the costs of digital convenience," the fee is not applied to an otherwise identical pickup order utilizing the same App. Accordingly, the Service Fee is a *de facto* delivery fee which is charged in addition to the disclosed Delivery Charge.

35. Jersey Mike's could have simply increased the Delivery Charge, but instead chose to charge a hidden Service Fee in order to mislead consumers about the true costs of delivery orders.

36. Given that the vast majority of American consumers already expect to pay sales tax on their purchase, Jersey Mike's purposefully hides this charge among state "taxes" where it is unlikely to be investigated and discovered.

37. Furthermore, by hiding the Service Fee within the "Taxes & Fees" line item, Jersey Mike's profits from reasonable consumers' ignorance of state and local tax rates.

38. Many states, including California, have preferential sales tax rates for certain food items. For example, cold sandwiches purchased for pickup or delivery are exempt from sales tax in California. *See* Cal. Code Regs. Tit. 18, § 1603(c). The average consumer is unlikely to know that cold sandwiches are exempt from sales tax.

39. Accordingly, reasonable consumers were led to believe that they were paying lawful sales tax when, in many instances, the "Taxes & Fees" were comprised *only* of the hidden Service Fee.

40. Jersey Mike's intent to deceive is further evidenced by the fact that the Service Fee is higher in states where food items are taxed at a preferential rate, including California. In other words, Jersey Mike's charges a higher Service Fee in states where consumers already *expect* to pay sales tax. Because they expect to pay tax, these consumers are far less likely to discover Jersey Mike's deception.

41. Although Jersey Mike's is a franchise, Jersey Mike's still maintains authority and control over franchise locations, including their business operations and pricing schemes. Furthermore, Jersey Mike's maintains control over the design of its App. Upon information and belief, individual franchisees cannot alter, edit, or otherwise change the design of the App or any representations contained therein.

42. At all times relevant to this action, Jersey Mike's approved, endorsed, required, aided, or otherwise encouraged franchisees to charge the Service Fee, as evidenced by its requirement that all franchisees use the App to manage mobile orders.

43. Jersey Mike's had numerous feasible alternatives for designing a user experience that would adequately disclose and explain the Service Fee to consumers using the App, yet intentionally chose to employ a design which hid or obscured Jersey Mike's pricing for delivery orders, thereby confusing or otherwise deceiving reasonable consumers as to the nature and amount of additional fees being charged and the actual retail price of Jersey Mike's menu items.

44. Given the fact that the Service Fee is only charged on delivery orders, and not otherwise identical pickup orders placed through the App, it is evident that ***the Service Fee is actually a hidden delivery fee*** which is charged in addition to Jersey Mike's disclosed Delivery Charge.

45. The Service Fee charged on Jersey Mike's delivery orders renders its representation that it charges a $2.99 "Delivery Charge" false and misleading.

46. It is no secret within the restaurant industry that it is challenging to provide delivery services while maintaining slim profit margins.

47. However, rather than being transparent about costs, Jersey Mike's instead chose to mislead and confuse customers by charging an undisclosed Service Fee that was a *de facto* delivery fee.

48. Based on information and belief, this strategy was developed, in part, to undercut third-party delivery services, such as Uber Eats,[9] and to convince customers that Jersey Mike's delivery services were cheaper than those of its competitors, who are also able to deliver the identical products from Jersey Mike's.

49. Because third-party delivery services typically earn a commission from retailers on each order, Jersey Mike's has a strong financial incentive to redirect

[9] Various third-party retail delivery services offer delivery of items from Jersey Mike's stores. Accordingly, consumers have a choice when it comes to which delivery service they utilize when purchasing otherwise identical items from Jersey Mike's.

sales to its own delivery program in order to avoid incurring third-party delivery costs.

50. During the the relevant time period, Jersey Mike's offered various promotions to customers, including offers for "free delivery." For example, in September of 2025, Jersey Mike's offered free delivery for customers purchasing through the App, which it advertised through its official Facebook account.[10]




---

[10] https://www.facebook.com/reel/399732666134183 (Last accessed February 4, 2026).

51. Based on information and belief, this promotion and others like it were designed to drive customers to the Jersey Mike's App by providing a lower cost delivery option than competing third-party delivery services.

52. However, despite promoting "free delivery," Jersey Mike's still charged its customers a Service Fee,which was a *de facto* delivery fee, in addition to its disclosed Delivery Charge, thereby deceiving customers as to the true cost of its delivery services.

53. No reasonable consumer would expect to be charged a "Service Fee" for their delivery purchase in addition to the conspicuously disclosed Delivery Charge itemized on their receipt.

54. Upon information and belief, the Service Fee results in significant profit to Jersey Mike's. Mobile orders account for approximately 40% of Jersey Mike's sales.[11] With sales of more than $3 billion in 2023[12], the undisclosed Service Fee

[11] https://www.entrepreneur.com/franchises/jersey-mikes-switched-up-its-strategy-for-serving/484889#:~:text=Related:%20Here's%20how%20we%20determined,process%20and%20smoother%20sub%20delivery (Last accessed February 4, 2026).

[12] https://www.franchisetimes.com/franchise_mergers_and_acquisitions/blackstone-to-snap-up-jersey-mike-s-in-massive-pe-deal/article_bc07981c-a695-11ef-a5dd-c7cbc37a9eff.html#:~:text=unit%20volume%20increases.-,Jersey%20Mike's%20tapped%20New%20Jersey%20native%20Danny%20Devito%20as%20its,and%20Firehouse%20Subs%2C%20at%20$962%2C955 (Last accessed February 4, 2026).

likely resulted in tens of million of dollars in revenue to Jersey Mike's during the relevant time period.

**PLAINTIFF'S FACTS**

55. Plaintiff Justin Brewer is a resident of San Jacinto, California and a customer of Jersey Mike's who made purchases using the Jersey Mike's App on his personal cell phone.

56. As recently as February 25, 2024, Plaintiff used the App to place a delivery order from the Jersey Mike's store at 400 E. Esplanade Avenue in San Jacinto, California. He was charged a Service Fee on this order.

57. At the time he placed his order, Plaintiff reviewed his purchase total and understood his delivery purchase would incur a $2.99 "Delivery Charge." Plaintiff was unaware of any additional charges associated with the delivery.

58. In making his purchase, Plaintiff reasonably believed the bundled "Taxes & Fees" he was charged were the local and/or state sales taxes assessed on any sale of goods. He was unaware at the time of purchase that his order was exempt from any sales tax.

59. It was only upon further investigation and review of his digital receipts on the App after his purchase that he realized that the "Taxes & Fees" he was charged included an otherwise undisclosed Service Fee.

60. Plaintiff had various alternatives when choosing to place a delivery order from Jersey Mike's, including utilizing a third-party service such as UberEats.

61. Had Plaintiff been aware that he would be charged the undisclosed Service Fee, he would have considered this fact in deciding whether to make a purchase through the App. However, without being made aware of the Service Fee prior to his purchase, Plaintiff could not meaningfully compare Jersey Mike's pricing of its retail items or its delivery fees with that of its competitors.

62. Plaintiff purchased Jersey Mike's products in reliance on the delivery pricing as set out on the Jersey Mike's App. In reality, the Service Fee rendered the pricing on the App false.

63. Since discovering he was charged the hidden Service Fee, Plaintiff has not made any delivery purchases through the Jersey Mike's App. Plaintiff would consider using the App to make delivery purchases from Jersey Mike's in the future, but cannot trust the truthfulness of Jersey Mike's representations regarding the costs of its menu items and delivery services.

64. As a result of Defendants' business practices, Plaintiff sustained economic injury by paying an undisclosed Service Fee in addition to the menu pricing as set out in Jersey Mike's App.

## DEFENDANTS' UNLAWFUL CONDUCT

65. Because Jersey Mike's operates a restaurant franchise system, Jersey Mike's maintains certain authority and control over all franchise locations, including

their business operations, pricing schemes, and the App—which includes whether a Service Fee was charged on Jersey Mike's orders across its franchise system.

66. At all times relevant to this action, Jersey Mike's approved, endorsed, required, aided, or otherwise encouraged its franchisees to charge the Service Fee, as evidenced by its design of the App, which Jersey Mike's requires its franchisees to use. Upon information and belief, franchisees have no control over the content of the Jersey Mike's App, nor are they able to make any changes to its design or the representations contained therein.

67. At all times relevant to this action, Jersey Mike's engaged in conduct which was designed to confuse, mislead, and/or deceive reasonable consumers about the true costs associated with their use of the App.

68. As the designer of the App, Jersey Mike's was well aware of and responsible for the representations contained therein.

69. Likewise, Jersey Mike's had actual knowledge of its own pricing practices, including its practice of charging a Service Fee to Jersey Mike's customers placing delivery orders.

70. Jersey Mike's had numerous available design alternatives which would have conspicuously disclosed the Service Fee to consumers, as evidenced by the individual line item it employed at checkout for the Delivery Charge.

71. Instead, Jersey Mike's chose to hide the Service Fee within a line item called "Taxes & Fees" where it was unlikely to be discovered by reasonable consumers.

72. There is no reasonable explanation why the Service Fee should not be disclosed as a separate line item or, in the alternative, added to the disclosed Delivery Charge but for the intent to mislead or deceive consumers about the true costs of Jersey Mike's delivery services.

73. The "Taxes & Fees" line item which hides the Service Fee does not appear on the customer's order review screen (i.e., "My Order")—it only appears on the final checkout screen, immediately prior to purchase, compounding Defendants' deception.

74. The use of a small, inconspicuous icon to obscure the Service Fee demonstrates Jersey Mike's employed deliberate design choices intended to minimize the chance of consumers discovering these charges prior to purchase.

75. Jersey Mike's knew that reasonable consumers would fairly assume that "Taxes & Fees" referred to lawful, government-mandated charges such as local and state sales tax.

76. Because many states (including California) do not charge sales tax on the types of products Jersey Mike's sells, Jersey Mike's further deceived customers by hiding the fee within a line item where a reasonable consumer would expect to find lawful, government-imposed sales taxes and fees. In doing so, Jersey Mike's

profited from consumer ignorance of preferential tax rates and decreased the likelihood of their deception being discovered. Jersey Mike's was aware that customers would be unlikely to notice and investigate the "Taxes & Fees" if they believed the charges were government-mandated taxes and fees.

77. Furthermore, because customers are not required to acknowledge the Service Fee in any way before purchase, they can—and do—complete their transactions without ever being made aware of the additional charge.

78. Jersey Mike's use of a separate line item to disclose the "Delivery Charge" further supports a finding that the company intended to obscure the Service Fee from reasonable consumers, as reasonable consumers would expect that the "Delivery Charge" would include all charges associated with their delivery orders.

79. Failure to disclose the Service Fee prior to purchase deprived consumers of any reasonable opportunity to evaluate Jersey Mike's pricing which is, undoubtedly, a material term of any retail transaction.

80. Moreover, Jersey Mike's failed to disclose to consumers that the cost difference between selecting pickup or delivery for their orders placed through the App would be greater than the conspicuously disclosed "Delivery Charge" because the Service Fee functions as an additional, undisclosed, *de facto* delivery fee, which unfairly and deceptively precludes consumers from making informed purchase decisions.

81. It is unreasonable to expect consumers take extra steps during checkout to investigate and discover potential hidden fees associated with their purchases—especially when consumers can complete their purchases without ever taking such steps, thus avoiding any purported disclosure of the Service Fee.

82. In the past few years, online ordering and delivery have increased significantly for Jersey Mike's.[13] Jersey Mike's knows that this continued growth could be compromised if consumers were aware of the hidden costs associated with their use of the App.

83. Based on Jersey Mike's earnings reports, it is reasonable to assume that millions of customers have been charged the unfair and deceptive Service Fee.

84. The undisclosed Service Fee constitutes economic harm to consumers in the form of overpayment for their purchases. Based on information and belief, Jersey Mike's has collected millions of dollars from consumers nationwide through its systematic implementation of the unfair and deceptive practices described herein.

85. Jersey Mike's knew or should have known that its practice of concealing the mandatory Service Fee within a "Taxes & Fees" line item would deceive consumers about the true cost of their purchases.

---

[13] https://www.restaurantbusinessonline.com/financing/how-jersey-mikes-did-things-its-own-way-won-2020 (Last accessed February 4, 2026).

86. There is no reasonable explanation for Jersey Mike's choice to hide the Service Fee from consumers as described herein, but for the fact that Jersey Mike's profits from their deception at the expense of reasonable consumers.

87. The App's checkout process is designed to encourage quick completion of transactions which reduces the likelihood that consumers will take the time to investigate every aspect of their bills before completing their purchases—especially when additional fees are purposefully and carefully hidden to avoid detection.

88. Furthermore, the majority of consumers view the App on a small mobile phone screen or handheld electronic device, making it even more difficult to notice any miniscule, "disclosures" which might be hidden in the fine print.

89. Reasonable consumers rely on merchants to provide clear and conspicuous disclosure of all mandatory fees and charges before requiring payment.

90. On April 9, 2024, Plaintiff sent notice to Jersey Mike's via U.S. Certified Mail alleging violation of various state consumer protection statutes based on the conduct described herein and demanding corrective action. Jersey Mike's failed to respond to Plaintiff's demand and continued to charge the Service Fee.

91. Based on information and belief, at some point after receiving Plaintiff's notice and demand for corrective action in April 2024, Jersey Mike's revised its App to include language stating that service fees "may apply" at checkout. However, this revision still fails to adequately notify consumers of the Service Fee and is not clear and conspicuous. Additionally, the Service Fee continues to operate

as a *de facto* delivery fee, which is misleading to reasonable consumers for the reasons detailed herein.

92. The additional language appears on the "My Order" screen in a light gray italic font, which is barely visible due to a lack of contrast with the white background. An example of the revised "My Order" screen is reproduced below:




93. Furthermore, the language is false and misleading insofar as it suggests to consumers that the Service Fee is discretionary (e.g., "may apply") when in fact the Service Fee is *automatically applied* to every order.

94. As a result of Jersey Mike's deceptive practices, Plaintiff and other similarly-situated consumers have been charged undisclosed fees that they did not agree to pay and would not have agreed to pay had they been properly informed.

95. These damages continue to accrue as Jersey Mike's maintains its deceptive fee practices and continues to charge the undisclosed Service Fee to consumers using the its App.

96. The systematic nature of Jersey Mike's deceptive practices demonstrates that individual consumer action alone is insufficient to address the widespread harm caused by these practices.

## FED. R. CIV. P. 9(b) ALLEGATIONS

97. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Jersey Mike's is in the best position to know what content it places on its App during the relevant timeframe, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

98. **WHO**: Jersey Mike's unfairly, deceptively, and/or misleadingly imposed a Service Fee on customers making delivery purchases through the App.

99. **WHAT**: Jersey Mike's conduct here was, and continues to be, fraudulent because it hid, concealed, obscured, or otherwise disguised additional charges to consumers making delivery purchases through its App. Jersey Mike's

charged an undisclosed Service Fee in addition to its disclosed Delivery Charge on all delivery orders. This Service Fee was not charged on any pickup orders, rendering it a *de facto* delivery charge that was charged in addition to the disclosed Delivery Charge. Jersey Mike's failed to post, display, or otherwise adequately disclose this additional delivery fee to customers on the App, instead hiding the Service Fee behind a line item titled "Taxes & Fees," which reasonable consumers would understand to mean lawful sales tax and other government-imposed fees. The Service Fee was only discoverable if consumers noticed and clicked a small, unbolded icon which would show a breakdown of all the fees charged. Consumers were not required to acknowledge the Service Fee before completing their purchase. If a consumer did not notice the icon, they could still complete their purchase without the Service Fee ever being explicitly disclosed. Furthermore, upon information and belief, Jersey Mike's advertised a $2.99 Delivery Charge and, on certain occasions, free or discounted delivery. These representations were false and misleading as the automatic Service Fee charged to all delivery purchasers was a *de facto* delivery fee that directly contradicted both Jersey Mike's advertised delivery costs and promotional offers. Jersey Mike's knew, or should have known, that it failed to adequately disclose the true cost of delivery orders and that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions.

100. **WHEN**: Jersey Mike's engaged in these unfair, deceptive, or otherwise misleading practices during the putative Class Period and at the time Plaintiff and Class Members made purchases on the App, prior to and at the time Plaintiff and Class Members made claims after realizing the unlawful pricing scheme, and continuously throughout the applicable Class Period. Based on information and belief, this misconduct is ongoing.

101. **WHERE**: Jersey Mike's customers were uniformly charged a hidden Service Fee when placing delivery orders through the App.

102. **HOW**: Jersey Mike's hid, obscured, or otherwise concealed from consumers its imposition of the Service Fee by combining the charges with lawful taxes and fees in order to prevent consumers from discovering the additional charges.

103. **WHY**: The actions of Jersey Mike's detailed herein resulted in the generation of additional revenue for Jersey Mike's on each delivery order made through the App by Plaintiff and Class Members.

104. **INJURY**: Plaintiff and Class Members were injured by incurring an undisclosed charge on each and every transaction made through the App.

## CLASS ACTION ALLEGATIONS

105. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of himself and the members of the following proposed nationwide class ("Nationwide Class"):

> **During the fullest period allowed by law, all persons in the United States who were charged a Service Fee when making a delivery purchase from Jersey Mike's through the Jersey Mike's App within the applicable statute of limitations.**

106. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of himself and the members of the following class ("California Class"):

> **During the fullest period allowed by law, all persons in the state of California who were charged a Service Fee when making a delivery purchase from Jersey Mike's through the Jersey Mike's App within the applicable statute of limitations.**

107. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of himself and the members of the following class ("Multi-State Consumer Protection Class"):

> **During the fullest period allowed by law, all persons in the state of California or any state with similar laws[14] who were**

---

14 While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Colorado (Colo. Rev. Stat. § 6-1-101, *et seq*.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq*.); Delaware (Del. Code tit. 6, § 2511, *et seq*.); District of Columbia (D.C. Code § 28-3901, *et seq*.); Florida (Fla. Stat. § 501.201, *et seq*.); Hawaii (Haw. Rev. Stat. § 480-1, *et seq*.); Idaho (Idaho Code § 48-601, *et seq*.); Illinois (815 ICLS § 505/1, *et seq*.); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws § 445.901, *et seq*.); Minnesota (Minn. Stat. § 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. § 407.010, *et seq*.); Nebraska (Neb. Rev. Stat. § 59 1601, *et seq*.); Nevada (Nev. Rev. Stat. § 598.0915, *et seq*,); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq*.); New Jersey (N.J. Stat. § 56:8-1, *et seq*.); New Mexico (N.M. Stat. § 57-12-1, *et seq*.); New York (N.Y. Gen. Bus. Law § 349, *et seq*.); North Dakota (N.D. Cent. Code § 51-15-01, *et seq*.); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq*.); Oregon (Or. Rev. Stat. § 646.605, *et seq*.); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq*.); Texas (Tex. Bus. & Com. Code § 17.41, *et seq*.); Virginia (VA Code § 59.1-196, *et seq*.); Vermont (Vt. Stat. tit. 9, § 2451, *et seq*.); Washington (Wash. Rev. Code § 19.86.010, *et seq*.); West Virginia (W. Va. Code § 46A-6- 101, *et seq*.); and Wisconsin (Wis.

**charged a Service Fee when making a purchase from Jersey Mike's through the Jersey Mike's App within the applicable statute of limitations.**

108. Excluded from the Classes are Defendants and its subsidiaries and affiliates, Defendants' executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families. Plaintiff reserves the right to amend or modify the Class definitions as necessary.

109. Numerosity: Fed. R. Civ. P. 23(a)(1). Plaintiff is unable to provide a specific number of members in the Classes because that information is solely in the possession of Jersey Mike's. However, the exact number of Class members, including the names and addresses of all Class Members, will be easily ascertained through a review of Jersey Mike's business records and App transaction data. Upon information and belief, each Class contains likely more than tens of thousands of consumers nationwide and is therefore so numerous that joinder of all members would be impracticable. The App is available to consumers throughout the United States, and Jersey Mike's operates thousands of retail locations across every state where these deceptive practices occur, supporting the numerosity requirement.

110. Typicality: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, made purchases through the Defendants' App that

Stat. § 100.18, *et seq*.). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

were unfairly, deceptively, or misleadingly priced through the imposition of the Service Fee. Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that, he has incurred or will continue to incur damage as a result of overpaying for Jersey Mike's delivery orders due to Defendants' business practices. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants' behavior has been systematic and deliberate and results in the same injury to all Class Members.

111. Commonality: Fed. R. Civ. P. 23(a)(2). Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a uniform pattern, practice, and policy of charging the undisclosed Service Fee to all consumers who use the App. Defendants' systematic practice of concealing the Service Fee within the "Taxes & Fees" line item affects all Class Members in the same manner through identical application programming and checkout processes. Common questions of law and fact include, without limitation:

a. Whether Defendants charge the undisclosed Service Fee to consumers using the App;

b. Whether Defendants' practice of concealing the Service Fee within the "Taxes & Fees" line item constitutes deceptive conduct;

c. Whether Defendants' disclosed Delivery Charge is deceptive or misleading to reasonable consumers insofar as it fails to include the Service Fee which is charged on every delivery order (and only on delivery orders);

d. Whether Defendants' conduct violates applicable state consumer protection statutes;

e. Whether Defendants' conduct constitutes fraud and unjust enrichment;

f. Whether Class Members are entitled to damages and equitable relief; and

g. Whether Defendants should be enjoined from continuing its deceptive practices.

112. Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of Class Members. He has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including complex consumer class actions, and Plaintiff intends to prosecute this action vigorously.

113. Injunctive/Declarative Relief: The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be injured by Defendants' business practices. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

114. Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other

available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the amount of the Service Fee incurred on an average purchase through Jersey Mike's and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

115. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

116. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT I**

**Violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.***

**(On Behalf of Plaintiff and the California Class)**

117. Plaintiff brings this count on behalf of himself and the California Class

and repeats and re-alleges all previous paragraphs as if fully included herein.

118. The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq*.

119. The CLRA applies to all claims of all Class Members because the conduct which constitutes violations of the CLRA by Defendants occurred within the State of California.

120. Plaintiff and Class Members are "consumers" as defined by Civil Code § 1761(d).

121. The Jersey Mike's products qualify as "goods" as defined by Civil Code § 1761(a).

122. Plaintiff and the Class Members' purchases of the Jersey Mike's Products are "transactions" as defined by Civil Code § 1761(e).

123. As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful.

(a) "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9);

(b) "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any

other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product." Civil Code § 1770(a)(20); and

(c) "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges []." Civil Code § 1770(a)(29)(A).

124. Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(9), (a)(20), and (a)(29(A) when they represented, through their advertising and other express representations, the price of the Jersey Mike's products with intent not to sell them at the advertised price and without the legally required disclosures.

125. As detailed in the body of this Complaint, Defendants have repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of the Jersey Mike's products which are false due to the uniform imposition of the Service Fee described herein. Indeed, Defendants concealed the true price of purchasing its products for delivery, and the true nature of the "Taxes & Fees" they were charging on each purchase, from Plaintiff and Class Members.

126. No reasonable consumer would expect the "Taxes & Fees" charged by Defendants to include an unlawful Service Fee in addition to lawful state and local sales tax, especially when a "Delivery Charge" is conspicuously disclosed as a separate line item.

127. Furthermore, any purported disclosure added to the App after 2024, as

described in Paragraphs 91-93 above, is inadequate, unclear, and inconspicuous, in violation of California law, and deceptive insofar as it misrepresents the mandatory nature of the Service Fee.

128. Defendants' misrepresentations were material to Plaintiff's and Class Members' decision to purchase the products for delivery from Jersey Mike's.

129. Defendants willfully employed a scheme designed to conceal its additional Service Fee, and did so willfully, wantonly, and with reckless disregard for the truth.

130. As a result of Defendants' omissions and misrepresentations, Plaintiff and Class Members purchased and paid for products that did not conform to Defendants' advertised prices, and they were deprived of the benefit of their bargain and spent money on products that they would not have purchased, or would have purchased on different terms, had they known the true facts regarding the Service Fee.

131. These business practices are misleading and/or likely to mislead consumers and should be enjoined.

132. Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendants in writing by certified mail sent on April 9, 2024 of their violations of § 1770 described above. Plaintiff's letter demanded that Defendants correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to do so. Defendants have failed to take any corrective action.

133. A declaration establishing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

134. Pursuant to California Civil Code §§ 1780(a)(1)-(5) and 1780(e), Plaintiff seeks a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, money damages, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

**COUNT II**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code § 17500, et seq.**
**On Behalf of Plaintiff and the California Class)**

135. Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs as if fully included herein.

136. The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

137. Plaintiff and Defendants are "person[s]" as defined by California Business and Professions Code § 17506.

138. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus.

& Prof. Code § 17500.

139. At all times relevant, Defendants' advertising and the listing of prices for delivery of their products on their menus was false, misleading, and likely to deceive the reasonable consumer and the public by representing that delivery of items from its menu cost a certain amount, when the price was uniformly higher than advertised as a result of Defendants' hidden Service Fee.

140. Defendants engaged in the false and/or misleading advertising and marketing alleged herein with the intent to directly or indirectly mislead consumers as to the cost of their purchases.

141. At the time of their misrepresentations, Defendants were aware that all consumers making purchases for delivery would be charged the Service Fee. Defendants concealed, omitted and/or failed to disclose this information to Plaintiff and Class Members.

142. In making and publicly disseminating the statements and/or omissions alleged herein, Defendants knew or should have known that the statements and/or omissions were false or misleading, and therefore violated California Business and Professions Code § 17500, *et seq*.

143. Plaintiff has standing to pursue claims under the FAL as he reviewed and relied on Defendants' advertising, representations, and marketing materials regarding the price of delivery of Jersey Mike's products, including those contained within the App, when selecting and purchasing the products.

144. Plaintiff and Class Members have suffered injury in fact and have lost money and/or property as a result of Defendants' false advertising as set forth herein. Plaintiff and Class Members have been injured because they paid more money to Defendants for delivery than was advertised on their menu as a result of the hidden Service Fee, and Defendants benefitted from their overpayment.

145. Defendants' false and misleading advertising presents a continuing threat to consumers, as Defendants continue to add the Service Fee to all delivery orders. This will continue to mislead consumers as to the real price of delivery purchases from Jersey Mike's restaurants.

146. As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Class Members who paid an undisclosed Service Fee for the products, uniformly increasing the advertised price of the products.

147. Plaintiff and Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendants and by means of its deceptive or misleading representations, including monies already obtained from Plaintiff and Class Members as provided for by the California Business and Professions Code § 17500.

**COUNT III**
**Violations of the California Unfair Competition Law (“UCL”), Cal. Bus. & Prof. Code §§ 17200, et seq.**

**(On Behalf of Plaintiff and the California Class)**

148. Plaintiff brings this count on behalf of himself and the California Class and repeats and re-alleges all previous paragraphs as if fully included herein.

149. Defendants are "person[s]" as defined by Cal. Bus. & Prof. Code § 17201.

150. Unfair competition is defined by Cal. Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice; (2) and "unfair" business act or practice; (3) a "fraudulent" business act or practice; and (4) "unfair, deceptive, untrue or misleading advertising." The definitions of § 17200 are drafted in the disjunctive, meaning each of these "wrongs" operates independently from the others.

151. Because Defendants have violated Cal. Bus. & Prof. Code § 17500, *et seq.*, Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which provides a cause of action for an "unlawful" business act or practice perpetrated on members of the California public.

152. Defendants had other reasonably available alternatives to further their legitimate business interest, other than the conduct described herein, such as raising their menu prices or increasing the amount of the conspicuously disclosed Delivery Charge.

153. Plaintiff and Class Members reserve the right to allege other violations of law, which constitute other unlawful business practices or acts, as such conduct

is ongoing and continues to this date.

154. Defendants' actions and representations constitute an "unfair" business act or practice under Cal. Bus. & Prof. Code § 17200 in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

155. Without limitation, it is an unfair business act or practice for Defendants to knowingly or negligently represent to the consuming public that its price for delivery is substantially lower than the consumer will actually be charged after the imposition of the Service Fee.

156. Such conduct by Defendants is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendants' prices are lower than they actually are once the Service Fee is added to the consumer's bill.

157. Defendants had numerous other available alternatives to further its legitimate business interest, other than the conduct described herein.

158. Plaintiff and Class Members could not have reasonably avoided the injury suffered by each of them.

159. Defendants' claims and misleading statements were false and/or likely to deceive the consuming public within the meaning of Cal. Bus. & Prof. Code §

17200, *et seq*. Defendants engaged in fraudulent acts and business practices by knowingly or negligently representing to Plaintiff and other similarly situated consumers, whether by conduct, orally, or in writing by intentionally advertising their menu prices to be less than what Defendants actually intend to charge the consumer.

160. Defendants knowingly and fraudulently concealed the Service Fee among lawful "Taxes & Fees" in order to prevent Plaintiff and Class Members from discovering that the price of delivery was uniformly higher than advertised. It was unlikely, if not impossible, that Plaintiff and Class Members who purchased Defendants' products would discover the imposition of the Service Fee prior to their purchase. Thus, Plaintiff and Class Members could not have reasonably avoided the harm they suffered.

161. Plaintiff and Class Members who purchased delivery of Jersey Mike's products suffered an injury by virtue of buying products for which Defendants misrepresented the actual price and/or omitted the true nature of the additional Service Fee they charged to consumers in conjunction with purchase of the products.

162. The gravity of the harm suffered by Plaintiff and Class Members who purchased the deceptively priced Jersey Mike's products outweighs any legitimate justification, motive or reason for charging the hidden Service Fee. Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the

established public policies as set out in federal regulations and are substantially injurious to Plaintiff and Class Members.

163. As a result of Defendants' unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.

**COUNT IV**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and the Multi-State Consumer Class)**

164. Plaintiff brings this count on behalf of himself and the Multi-State Consumer Class and repeats and re-alleges all previous paragraphs as if fully included herein .

165. Plaintiff and Class Members have been injured as a result of Defendants' violations of the state consumer protection statutes listed above in Paragraph 107, footnote 14, which also provide a basis for redress to Plaintiff and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

166. Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

167. Defendants violated the Multi-State Consumer Class states' unfair and deceptive acts and practices laws by falsely representing the costs of the goods and services sold through their App, including by charging the undisclosed Service Fee that was misleading to reasonable consumers and which contradicted Defendants' affirmative representations regarding the pricing of orders placed through the app.

168. Defendants' misrepresentations and/or omissions were material to Plaintiff and Class Members' decision to purchase goods and services through the App.

169. Defendants made their untrue and/or misleading statements, representations, and omissions willfully, wantonly, and with reckless disregard for the truth.

170. As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members were damaged by paying the undisclosed and unforeseen Service Fee in conjunction with their purchases.

171. As a result of Defendants' violations, Defendants have been unjustly enriched.

172. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory

relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT V**
**Fraudulent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class, or, in the Alternative, the California Class)**

173. Plaintiff brings this count on behalf of himself and the Classes and repeats and re-alleges all previous paragraphs as if fully included herein.

174. At all times during the relevant time period, Defendants represented that they charged the posted retail price plus the applicable Delivery Charge for delivery orders of their products.

175. Defendants knew that this representation was false due to their uniform imposition of a Service Fee in addition to the posted Delivery Charge.

176. At all times relevant to this action, Defendants designed and otherwise controlled the App, including how the Service Fee was communicated to consumers on and through Jersey Mike's official website and App.

177. Although Defendants could have clearly disclosed the Service Fee, they knowingly concealed this fee among other lawful taxes in order to prevent consumers from discovering the true price of its products.

178. Defendants intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and Class Members to act thereon.

179. Plaintiff and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their

purchase of Defendants' products.

180. Plaintiff and Class Members were damaged as a result of Defendants' misrepresentations by paying a uniformly higher price than they reasonably expected to pay based on Defendants' representations.

181. Plaintiff and Class Members are entitled to all relief the Court proper as a result of Defendants' actions described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

A. Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Name Plaintiff as Class Representative of the Classes;

C. Name Plaintiff's counsel as Class Counsel for the Classes;

D. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

E. Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

F. Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G. Award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H. Award such further relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: February 6, 2026

Respectfully submitted,

**MILBERG PLLC**

*/s/ Alex R. Straus*
Alex R. Straus (SBN 321366)
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

**LEE SEGUI, PLLC**
Erin J. Ruben
Thomas A. Pacheco
900 W. Morgan Street
Raleigh, NC 27603
eruben@leesegui.com
tpacheco@leesegui.com

Harper T. Segui
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@leesegui.com

***Attorneys for Plaintiff and the Clas***