UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

**(STAY / JS6 Admin)**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00535-SSS-DTBx | Date | August 6, 2026 |
| Title | *Brewer v. Jersey Mike's, Inc. et al.* | | |

| | |
|---|---|
| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY [DKT. NO. 21] AND DENYING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE [DKT. NO. 24]**

Before the Court is Defendant Jersey Mike's Franchise Systems, LLC's ("JMFS") Motion to Compel Arbitration and Stay. [Dkts. No. 21, 22, "Motion"]. Plaintiff Justin Brewer opposed, [Dkt. No. 33, Opposition or "Opp."], and JMFS replied, [Dkt. No. 35, "Reply"]. Having reviewed the parties' arguments, relevant legal authority, and the record in this case, the Court **GRANTS** the Motion, **COMPELS** Plaintiff to arbitrate his claims on an individual basis, and **STAYS** this action pending the completion of arbitration.[1] [Dkt. No. 21].

---

[1] JMFS filed a Request for Judicial Notice in support of its Motion, seeking judicial notice of the 2025 AAA Consumer Arbitration Rules and the 2024 AAA Consumer Fee Schedule. [Dkt. No. 23]. Because the Court does not rely on either document in resolving the Motion, the Request for Judicial Notice is **DENIED** as moot.

# I. BACKGROUND

Plaintiff alleges that JMFS operates a uniform online ordering system through which consumers order food from Jersey Mike's restaurants for pickup or delivery. [Dkt. No. 1, "Compl." ¶ 2]. According to the Complaint, JMFS discloses a $2.99 "Delivery Charge" on delivery orders at checkout but also imposes a separate, undisclosed "Service Fee" that is bundled into a "Taxes & Fees" line item. [*Id.* ¶¶ 3–6]. Plaintiff alleges that the Service Fee is charged only on delivery orders and therefore functions as a de facto delivery fee that renders JMFS's advertised delivery pricing false and misleading. [*Id.* ¶¶ 6, 44–45].

Plaintiff placed a delivery order through the Jersey Mike's mobile application (the "App") in early 2024 and was charged the Service Fee. [*Id.* ¶¶ 55–56]. On April 9, 2024, Plaintiff sent JMFS a written notice and demand letter under the California Consumer Legal Remedies Act ("CLRA"), alleging that JMFS's fee disclosures across what Plaintiff described as a "Digital Ordering Platform" (a term Plaintiff used to encompass both Jersey Mike's website and the App) violated various consumer-protection statutes. [*Id.* ¶ 90; Dkt. No. 25-2]. Plaintiff filed this putative class action on February 6, 2026, asserting five causes of action: (1) violation of the CLRA; (2) violation of California's False Advertising Law; (3) violation of California's Unfair Competition Law; (4) violation of various state consumer-protection statutes on behalf of a multi-state class; and (5) fraudulent misrepresentation. [*Id.* ¶¶ 117–181].

In support of its Motion, JMFS submits evidence that Plaintiff agreed to arbitrate his disputes with JMFS. JMFS's 2013 terms of use authorized JMFS to update its terms and provided that continued use of its services would constitute assent to any updated terms. [Motion at 8–9]. In 2018, JMFS updated its terms of use (the "2018 Terms") to add a mandatory arbitration provision (the "Arbitration Agreement") requiring registered users to arbitrate, on an individual basis before the American Arbitration Association, any dispute "relating in any way to this Website," and waiving class claims. [*Id.* at 9–12; Dkt. No. 22-1, "Hopper Decl.," Ex. B]. JMFS's evidence reflects that in April 2018, it emailed Plaintiff notifying him of the updated 2018 Terms, that the email contained a hyperlink to those terms and advised Plaintiff that continued use would constitute acceptance, and that Plaintiff opened the email and continued to use JMFS's website and App, including to place orders, over the following six years. [*Id.* at 9–12; Hopper Decl.]. JMFS further submits that its website and the App link to the same terms of use and present the same fee disclosures. [Hopper Decl. ¶ 18].

Plaintiff filed suit on February 6, 2026, naming both Jersey Mike's, Inc. and Jersey Mike's Franchise Systems, Inc. as defendants. [*See generally* Compl.]. Plaintiff voluntarily dismissed Jersey Mike's, Inc. on March 19, 2026. [Dkt. No. 15]. The sole remaining defendant, JMFS (f/k/a Jersey Mike's Franchise Systems, Inc.), filed the Motion together with a concurrently filed motion to dismiss. [Dkts. No. 21, 24]. The parties stipulated to continue the hearing on the motion to dismiss pending resolution of the Motion. [Dkts. No. 30, 32].

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court must "stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing 9 U.S.C. § 3). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4). The FAA reflects a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified).

To decide whether to compel arbitration, a court's role is limited to deciding two gateway issues: "whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen*, 763 F.3d at 1175. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## III. DISCUSSION

### A. Valid Arbitration Agreement Exists

JMFS has carried its burden of establishing a valid agreement to arbitrate. JMFS's evidence shows that Plaintiff was a registered user of its online ordering system; that in April 2018 JMFS emailed Plaintiff notifying him of the updated 2018 Terms and providing a hyperlink to review them; that the email advised Plaintiff that continued use would constitute acceptance of those terms; and that Plaintiff opened the email and continued to use JMFS's website and App for approximately six years. [Motion at 8–12].

Plaintiff does not meaningfully dispute these formation facts. In his Opposition, Plaintiff accepts JMFS's formation evidence for purposes of this Motion and does not dispute that he received and opened the April 2018 email, that the email contained a hyperlink to the 2018 Terms, or that he continued to use JMFS's website, including to order food, after receiving that notice. [Opp. at 12, 20–28]. Instead, Plaintiff contends that no agreement was ever formed as to his use of the *App* specifically, arguing that the App itself provided no notice of the 2018 Terms. [Opp. at 20–27].

That argument does not defeat contract formation. It is, in substance, an argument about the *scope* of the Arbitration Agreement—that is, whether an agreement Plaintiff concededly entered reaches disputes arising from his use of the App—and the Court addresses it as such below in the next section.

In light of Plaintiff's acceptance of JMFS's formation evidence for purposes of this Motion, and on the record presented, the Court finds that a valid and enforceable agreement to arbitrate exists between Plaintiff and JMFS.

**B. Parties' Dispute Falls Within the Scope of the Arbitration Agreement**

The dispositive question is one of scope. The Arbitration Agreement requires arbitration of any dispute "relating in any way to this Website." Plaintiff argues that "Website" means only the URL site (www.jerseymikes.com) and not the App, and that because his claims arise from App-based transactions, they fall outside the Arbitration Agreement. [Opp. at 8–19]. JMFS responds that, regardless of whether "Website" is construed to include the App, Plaintiff's claims relate "in any way" to the Website because Plaintiff challenges fee disclosures that appear identically on both platforms and because Plaintiff's own CLRA notice and Complaint expressly implicate the Website. [Reply at 3–9]. The Court agrees with JMFS.

**1. Whether the dispute relates "in any way" to the Website**

Plaintiff frames the dispositive issue as whether the word "Website" means "mobile application." That framing misapprehends the operative contract language. The Arbitration Agreement does not merely cover disputes about the Website. It covers disputes "relating in any way to this Website." [Hopper Decl., Ex. B]. The controlling scope resides in that relational language ("in any way") not in the noun standing alone ("website").

The Ninth Circuit has recognized that "relating to" language signals a broad arbitration clause, and that under such a clause a dispute is arbitrable so long as the factual allegations "touch matters" covered by the agreement. *Simula, Inc. v.*

*Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *see Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014). As such, the Court need not decide whether "Website," standing alone, encompasses the App. Even accepting Plaintiff's construction that "Website" refers solely to the URL site, the question is whether Plaintiff's claims relate "in any way" to that site. For the reasons discussed below, the Court finds that they do.

### 2. Plaintiff's CLRA notice and demand challenges the website

This dispute originated with Plaintiff's April 9, 2024 CLRA notice and demand letter, which is not extrinsic to this action but a required element of Plaintiff's CLRA damages claim. [Compl. ¶ 90]. *See* Cal. Civ. Code § 1782(a). In that letter, Plaintiff alleged that JMFS's fee disclosures were deficient across a "Digital Ordering Platform" that Plaintiff himself defined to include both Jersey Mike's website and the App, and demanded that JMFS cease charging the Service Fee on both its website and the App. [Reply at 4–5; Dkt. No. 25-2]. Because a required element of Plaintiff's CLRA claim squarely challenges disclosures on the Website, the parties' dispute relates to the Website within the meaning of the Arbitration Agreement.

### 3. The Complaint continues to challenge the website

Plaintiff's operative Complaint likewise relates to the Website. Although the Complaint emphasizes App-based transactions, it does not confine its allegations to the App. Claim 5 alleges that JMFS controls how the Service Fee "was communicated to consumers on and through Jersey Mike's official website and App." [Compl. ¶ 176]. The Complaint incorporates and endorses the April 2024 CLRA demand as "demanding corrective action" for the same conduct. [*Id.* ¶ 90]. And Plaintiff's Prayer for Relief seeks to enjoin JMFS from "engaging in the wrongful and unlawful conduct alleged herein," without limitation to the App. [Compl., Prayer for Relief]. These allegations, on the face of the Complaint, "touch matters" relating to the Website. *Simula*, 175 F.3d at 721.

Moreover, JMFS has submitted unrebutted evidence that the fee disclosures Plaintiff challenges appear identically on the Website and the App, which link to the same terms of use. [Hopper Decl. ¶ 18]. Plaintiff does not dispute this. The essence of the Complaint is that the Service Fee is concealed within a "Taxes & Fees" line item, and because that disclosure is common to both platforms, Plaintiff's challenge necessarily relates to the Website as well as the App.

### 4. Plaintiff cannot recharacterize his claims to avoid arbitration

In his Opposition, Plaintiff seeks to narrow his claims to the design of the App's "user interface," a phrase that appears nowhere in the Complaint and is introduced for the first time in his brief. [Opp. at 7, 19]. A plaintiff may not defeat an otherwise-applicable arbitration agreement by recasting his pleaded claims in an opposition brief. The Court evaluates arbitrability against the factual allegations of the Complaint, and those allegations relate to the Website as pleaded. See *Simula*, 175 F.3d at 721. At a minimum, to the extent any ambiguity remains as to whether Plaintiff's App-based allegations fall within a clause covering disputes "relating in any way to this Website," that ambiguity must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Goldman, Sachs*, 747 F.3d at 742. The Court thus concludes that Plaintiff's claims fall within the scope of the Arbitration Agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

- Defendant's Motion to Compel Arbitration and Stay is **GRANTED**.[2] [Dkt. No. 21].
- This action is **STAYED** in its entirety pending the completion of arbitration.
- Defendant's Motion to Dismiss is **DENIED WITHOUT PREJUDICE**. [Dkt. No. 24].
- The parties must file a joint status report regarding the status of arbitration within 90 days of the date of this Order and every 90 days thereafter and must notify the Court within 14 days of the completion of arbitration.
- The Clerk is **DIRECTED** to close the case administratively.

**IT IS SO ORDERED.**

---

[2] The Arbitration Agreement requires arbitration on an individual basis and waives class claims. [Hopper Decl., Ex. B]. Plaintiff does not contend the class waiver is unenforceable. The Court enforces the agreement as written, including its individual-arbitration requirement. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).